WESTERMAN BALL EDERER
MILLER & SHARFSTEIN, LLP
170 Old Country Road
Mineola, New York 11501
(516) 622-9200
Jeffrey A. Miller (JAM-6352)

*Counsel for Broadwall America, Inc.,*
*Reorganized Debtor*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
In re:

    BROADWALL AMERICA, INC.,                       Chapter 11
                                                                 Case No. 04-13810 (JMP)

                                Debtor.
------------------------------------X
In re:

                                                                  Chapter 11
    BRAM WILL EL LLC,                             Case No. 05-10616 (JMP)

                                Debtor.
------------------------------------ X
In re:

                                                                  Chapter 11
    WILLIAM MUSCHEL, LLC,                     Case No. 05-10617 (JMP)

                                Debtor.
------------------------------------X
 BROADWALL AMERICA, INC.,

                                Plaintiff,


                   -against-                      Adv. Pro. No. 06-_____ (JMP)
                                                                   Adv. Pro. No. 06-_____ (JMP)
BRAM WILL EL LLC, and                                Adv. Pro. No. 06-_____ (JMP)
WILLIAM MUSCHEL, LLC,
                              Defendants.
------------------------------------X

# **COMPLAINT**

TO THE HONORABLE JAMES PECK,
UNITED STATES BANKRUPTCY JUDGE

          1.      Plaintiff Broadwall America, Inc., by its attorneys, Westerman Ball Ederer

Miller & Sharfstein, LLP, as and for its complaint against the defendants herein, respectfully alleges as follows:

## THE PARTIES

2. Plaintiff is a corporation formed and duly authorized to conduct business under the laws of the State of New York.

3. On June 2, 2004 ("Petition Date"), Plaintiff filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York ("the Broadwall Bankruptcy Proceeding").

4. On January 20, 2005, this Court confirmed Broadwall's plan of reorganization ("Reorganization Plan"), which became effective on January 31, 2005.

5. Bram Will El LLC ("Bram Will") is, upon information and belief, a limited liability company authorized to do business in the State of New York, and the owner of the real property located at 734 Broadway, New York, New York. On February, 2005, Bram Will filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York.

6. William Muschel LLC ("Muschel" and, together with Bram Will, "Sellers") is, upon information and belief, a limited liability company authorized to do business in the State of New York, and the owner of the real property located at 736 Broadway, New York, New York. On February, 2005, Muschel filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States District Court in the Southern District of New York (the Muschel and Bram Will bankruptcy cases are hereinafter sometimes jointly referred to as the "Sellers' Bankruptcy Cases").

## JURISDICTION AND VENUE

7.  This Court has jurisdiction to hear and determine this matter pursuant to 28 U.S.C. §§157 and 1334, the Standing Order of Referral of Cases to Bankruptcy Judges of the District Court for the Southern District of New York, dated July 19, 1984 (Ward, Acting C.J.), 11 U.S.C. §§105(a), 362, 1109, 1141, 1142, Federal Rules of Bankruptcy Procedure 7065 and this Court's Order dated January 20, 2005 confirming Broadwall's First Amended Plan of Reorganization (the "Confirmation Order"), the Declaratory Judgment Order and Assumption Order (defined below).

8.  This is a core proceeding pursuant to 28 U.S.C. §§1334 and 157. The statutory grounds for the relief sought herein are 11 U.S.C. §§105(a), 362, 1109, 1141, 1142 and Bankruptcy Rule 7065. Venue is proper before this Court pursuant to 28 U.S.C. §§1408 and 1409.

## NATURE OF THE ACTION

9.  Broadwall and the Sellers entered into a contract of sale dated August 7, 2002 ("the Contract") relating to the acquisition by Broadwall of two buildings located at 734 and 736 Broadway in Manhattan, New York ("the Properties").

10.  In the Broadwall Bankruptcy Cases, over the objection of Sellers, Judge Blackshear determined that he would address the validity of the Contract, refused to abstain from deciding this issue and refused to leave this issue for resolution in a pending action between Broadwall and the Sellers in the Supreme Court of the State of New York entitled *Broadwall America Inc. v. Bram Will El LLC and William Muschel*, Supreme Court, New York County, No. 603383-02 ("State Court Action").

11.  In the Broadwall Bankruptcy Case, Judge Blackshear then reached binding determinations that the Contract was valid, that the Contract had not terminated or been cancelled before the Petition Date and that Broadwall could assume the Contract. Judge Blackshear also

confirmed the Broadwall Reorganization Plan based on the continuing validity and non-termination of the Contract and its assumption by Broadwall.

12. Sellers appealed the above-described orders of Judge Blackshear to the U.S. District Court of the Southern District of New York. All those appeals were denied or dismissed.

13. On March 23, 2005 ("the March 23 Order"), after the non-termination and continuing validity of the Contract had been upheld and after Broadwall's Reorganization Plan had been confirmed and become effective, Judge Blackshear directed Broadwall and the Sellers to return to the State Court for the limited purpose of resolving any remaining issues relating to whether Sellers should be compelled to close under the Contract. Judge Blackshear did <u>not</u> direct the parties to re-litigate issues which he had already resolved in the Broadwall Bankruptcy Case. For this limited purpose, Judge Blackshear lifted the automatic stay of 28 U.S.C. § 362 in the Sellers' Bankruptcy Cases and modified the post-confirmation retention of jurisdiction in Broadwall's Bankruptcy Case.

14. After Judge Blackshear's March 23 Order, motion practice ensued in the State Court Action.

15. At that point, Sellers argued to the State Court that it should address again the non-termination and continued validity of the Contract ---- an issue which had been previously decided in the Broadwall Bankruptcy Proceeding. This issue was the <u>only</u> justification proferred by Sellers as to why they should not be compelled to proceed to a closing.

16. Broadwall contended in the State Court Action that, among other things, relitigation of the issue raised by Sellers was barred by the doctrines of *res judicata* and collateral estoppel and that, if Judge Blackshear was wrong, his determinations should be corrected by means of the federal appeals ---- <u>not</u> by collateral attack in the State Court Action.

17. By decision dated November 23, 2005, Justice Howard Beeler, Justice of the Supreme Court of the State of New York, granted Broadwall's motion in the State Court Action ("the Summary Judgment Decision") and decided, among other things, that Judge Blackshear had already determined that the Contract had not been terminated and was still valid. Based on this, Sellers were directed to close within 30 days.

18. Sellers appealed. By decision dated September 21, 2006, the Appellate Division of the Supreme Court of the State of New York, First Department ("Appellate Division") reversed the Summary Judgment Decision and rendered a decision ("the State Appellate Decision") which re-decided the issue of whether the Contract had terminated pre-petition. Directly contrary to the determinations reached by Judge Blackshear in the Broadwall Bankruptcy Proceeding, the State Appellate Decision decided that the Contract had in fact been terminated before the Petition Date.

19. In this action, Broadwall is seeking declaratory and injunctive relief relating to the State Appellate Decision.

20. Broadwall maintains that, in issuing the State Appellate Decision, the Appellate Division improperly encroached on the Bankruptcy Court's exclusive jurisdiction and violated the automatic stay of 11 U.S.C. § 362 by deciding issues which had not been referred to it and over which the Bankruptcy Court had expressly retained post-confirmation jurisdiction. Relief vis-a-vis the State Appellate Decision is also necessary and warranted under 11U.S.C. § 1142 since the State Appellate Decision will effectively sabotage the implementation of Broadwall's Reorganization Plan and improperly encroaches upon the Bankruptcy Court's express retention of jurisdiction as set forth in the Confirmation Order and Broadwall's Reorganization Plan.

21. Accordingly, Broadwall is seeking in this action a declaration that the State

Appellate Decision is void, together with appropriate related injunctive relief, including that (a) Sellers be compelled to comply with the prior binding and final orders of the Bankruptcy Court, (b) Sellers be precluded from seeking to re-litigate issues in the State Court Action which have already been finally decided in the Bankruptcy Court, and ©) Sellers be compelled to comply with Justice Beeler's Summary Judgment Decision and close under the Contract.

**Facts**

22. In the Contract, Broadwall agreed to make a total downpayment of 5% of the purchase price, *i.e.*, $650,000, before a closing. Of this downpayment, $50,000 was due upon signing the Contract. The balance of the downpayment ("the $600K Payment") was then due after a due diligence period in the event that Broadwall elected not to cancel the Contract as a result of its due diligence.

23. Broadwall paid the initial down payment of $50,000 on August 7, 2002, when the Contract was signed.

24. The due date of the $600K Payment was extended several times by court orders and by stipulations among the parties.

25. Broadwall tendered the $600K Payment to Sellers on October 1, 2003, when due.

26. Although Sellers refused to accept the $600K Payment when tendered on October 1, 2003, they did not contend that the tender was untimely. In fact, they did not make such a claim until approximately 15 months later, long after the Petition Date.

27. On June 2, 2004 ("Petition Date"), Broadwall filed a voluntary petition in the Bankruptcy Court for relief under Chapter 11 of the U.S. Bankruptcy Code, sections 101 *et seq.* (the "Broadwall Bankruptcy Proceeding").

6

28. By motion dated June 3, 2004, Broadwall made an application (the "Motion to Assume") for entry of an order seeking, among other things, authorization to assume the Contract as a reorganized debtor. On July 15, 2004, Sellers filed their Opposition ("Sellers' Opposition") to the Motion to Assume.

29. On July 15, 2004, Sellers also filed a motion ("the Abstention Motion") seeking an order to, among other things, have the Bankruptcy Court abstain from determining whether the Contract was terminated prior to the Petition Date, and to instead refer this issue to the State Court.

30. On August 25, 2004, Bankruptcy Judge Blackshear held a hearing ("the August 25 Bankruptcy Hearing") on the Motion to Assume and on the Abstention Motion. At the August 25 Bankruptcy Hearing, Sellers' counsel summarized the issue before the Bankruptcy Court as follows:

> ". . . the problem is very simple: We say there is no contract and they say there is a contract."

In response, Bankruptcy Judge Blackshear explicitly stated: "*I* will resolve that issue." (emphasis added).

31. Later during the same hearing, Sellers' counsel suggested that:

> ". . . in order to assume the contract, would there also be a determination of whether or not the contract was terminated."

To this, the Bankruptcy Court responded "yes, there has to be".

32. At the same hearing, the following colloquy took place between Judge Blackshear and Sellers' counsel:

> "Sellers' Counsel: . . . . they could assume whatever they have and you send it back to the [State Court] Judge to decide

>                                   whether there is a contract.....
>
> The Court:                        Why should I do that. That would be waste of judicial
>                                   economy.
>
>                                   *  *  *
>
> Sellers' Counsel:                 I can't convince you to send it back to the State Court,
>                                   Judge.
>
> The Court:                        No. . . . ."

33. Thus, even though Sellers asked the Bankruptcy Court to let Broadwall only assume "what they have" and send it back to State Court to decide whether there was a valid and existing Contract, the Court denied that request.

34. In the same vein, at the same hearing, Judge Blackshear also asked Sellers' counsel the following rhetorical question: ". . . why do you need to go the State Court to have a resolution as to whether there was a contract that was involved? <u>I</u> could do that". (emphasis added).

35. After the August 25 Bankruptcy Hearing, in an order dated September 28, 2004 ("the Abstention Denial Order"), the Bankruptcy Court denied the Abstention Motion and directed, in accordance with the procedure mandated by the Court of Appeals for the Second Circuit in the case of *Orion Pictures Corp. v. Showtime Networks Inc.*, 4 F.3d 1095 (2d Cir. 1993) ("the *Orion* case"), that the Motion to Assume be converted to an adversary proceeding.

36. Pursuant to the Abstention Denial Order, and without objection by Sellers, Broadwall filed an adversary complaint in Bankruptcy Court against the Sellers dated October 19, 2004, *Broadwall America, Inc. v. Bram Will El, LLC et al.,* Adv. Pro. No. 04-04401 ("the Contract Adversary Proceeding") <u>expressly</u> seeking, among other things, a declaration on the issue of whether the Contract remained a valid and binding real estate contract which had not been cancelled or otherwise terminated prior to the Broadwall Bankruptcy Proceeding. Broadwall's complaint in the

Contract Adversary Proceeding against the Sellers in Bankruptcy Court <u>specifically</u> asked for "a declaration that the Executory Contract is a valid binding real estate contract that has not been terminated".

37. The Bankruptcy Court then awarded Broadwall exactly the declaration it had requested.

38. On October 27, 2004, after notice to all the parties, the Bankruptcy Court held an extensive hearing ("the October 27 Bankruptcy Hearing") in connection with Broadwall's Contract Adversary Proceeding seeking a declaratory judgment on the validity of the Contract. In order to address whether there were any disputed factual issues that would prevent the Bankruptcy Court from ruling at that time on the validity of the Contract, Bankruptcy Judge Blackshear specifically asked the parties' counsel to "go through each fact and I will find out whether or not they are disputed".

39. At the conclusion of the October 27 Bankruptcy Hearing, the Bankruptcy Court ruled that there was no legitimate factual dispute on the issue of whether the Contract had terminated, and that the Contract had not in fact terminated. As stated above, when Sellers' counsel tried to argue that the Contract had terminated as a result of Broadwall's conduct, Bankruptcy Judge Blackshear answered: "Not the way I read the Contract."

40. The October 27 Bankruptcy Hearing included a lengthy inquiry by Bankruptcy Judge Blackshear about Sellers' position as to why the Contract was purportedly terminated and no longer in force and effect. In no uncertain terms, Sellers had the opportunity to raise any argument and/or fact as to why the Contract was terminated before the Court made its decision. After hearing all Sellers' arguments, the Bankruptcy Court, from the bench, granted Broadwall judgment on its declaratory judgment complaint in the Contract Adversary Proceeding.

41. Thereafter, on December 3, 2004, the Bankruptcy Court issued a written order ("the Declaratory Judgment Order") following up its prior oral decision from the bench. This order determined that the Contract had not been cancelled or otherwise terminated and that it remained valid and executory. This Declaratory Judgment Order stated in relevant part as follows:

> "There are no material issues of fact in dispute on the issue of whether the Executory Contract was terminated or otherwise cancelled prior to the Petition Date. Based on, among other things, the clear and unambiguous language of the Executory Contract, <u>the Executory Contract was not terminated or cancelled, by the Appellants or otherwise</u>, prior to the Petition Date, and the Executory Contract remains executory."
> (emphasis added)

42. On December 3, 2004, the Bankruptcy Court also issued an order ("the Assumption Order") granting the Motion to Assume and authorizing Broadwall to assume the Contract.

43. In all the above-described proceedings before the Bankruptcy Court and in all the above-described pleadings and papers filed with the Bankruptcy Court in connection with the Motion to Assume and the Contract Adversary Proceeding, Sellers never once asserted or alleged that Broadwall's tender of the $600K Payment was untimely.

44. Unhappy with the Bankruptcy's Court determination that the Contract remained valid and binding, Sellers made a motion in the Bankruptcy Court on or about February 11, 2005 (months after the Bankruptcy Court's determinations) for "clarification" of the above-described orders finding the Contract to be a valid and binding real estate contract which Broadwall could assume ("the Clarification Motion"). Sellers' theory about the purported untimeliness of the $600K Payment was asserted, <u>for the first time</u>, in this Clarification Motion, <u>after</u> the Bankruptcy Court had already ruled that the Contract was in full force and effect. In other words, Sellers never

10

expressed this objection in a timely fashion during the October 27 Bankruptcy Hearing, and only waited until after they lost on the underlying issue of whether the Contract was terminated to raise the issue for the first time.

45. Sellers' belated attempt to change its story and fabricate an additional justification for evading its obligations under the Contract ---- which justification was inconsistent with positions it previously asserted ---- was barred by, among other things, the doctrines of judicial estoppel and law of the case. Additionally, Sellers' Clarification Motion ---- which actually constituted a motion for reargument/reconsideration under F.R.Civ.P.59 ---- was untimely. Simply stated, months after Sellers had asserted several different reasons why the Bankruptcy Court should rule that the Contract was terminated and lost on each and every argument, Sellers then asserted a new argument for the first time, *i.e.* that the $600K Payment was untimely. Understandably, having already upheld the continuing validity of the Contract, Bankruptcy Judge Blackshear did not find Sellers' argument persuasive. Therefore, at a hearing in the Bankruptcy Court on February 22, 2005, Bankruptcy Judge Blackshear denied Sellers' Clarification Motion from the bench. In a written order dated March 15, 2005 (the "March 15 Order"), Bankruptcy Judge Blackshear reiterated his denial of Sellers' Clarification Motion. The Bankruptcy Court unequivocally stated that "Sellers' Clarification Motion is denied in all respects."

46. On June 4, 2004, Broadwall filed its proposed Reorganization Plan and a disclosure statement contemplating, among other things, payment to creditors in full and effectuation of assumption of the Contract by closing on the Contract. Sellers filed opposition to confirmation of the Reorganization Plan on December 28, 2004. A hearing on confirmation was held on January 12, 2005 and, on January 20, 2005, the Bankruptcy Court entered an order confirming Broadwall's Reorganization Plan ("the Confirmation Order"). On January 31, 2005, the Reorganization Plan

11

became effective.

47. The provisions of the Reorganization Plan and Confirmation Order provided that the Bankruptcy Court would retain exclusive jurisdiction over various matters, including:

- all matters arising out of or related to the Bankruptcy Proceeding or the Reorganization Plan;

- the issuance of such orders as might be necessary under Section 1142 of the Bankruptcy Code to implement the full and complete implementation of the Bankruptcy Plan;

- the determination of such matters that might arise in connection with the implementation of this Plan;

- the determination of disputes arising in connection with the interpretation, implementation and enforcement of the Reorganization Plan; and

- the determination of issues or disputes related to the Contract, including with respect to the closing of the Contract.

48. Sellers filed appeals from the Bankruptcy Court to the U.S. District Court from the Assumption Order, the Declaratory Judgment Order and the Confirmation Order (collectively, the "Bankruptcy Appeals").

49. All the Bankruptcy Appeals were denied and/or dismissed by the U.S. District Court for the Southern District of New York.

50. In February 2006, Sellers filed the Sellers' Bankruptcy Cases. By reason of the Sellers' Bankruptcy Cases, there existed an automatic stay under 11 U.S.C. §362 precluding Broadwall from continuing to prosecute the State Court Action against Sellers.

51. After issuing the Abstention Denial Order, the Declaratory Judgment Order, the Assumption Order and the Confirmation Order, Judge Blackshear issued a written decision dated March 23, 2006 ("the March 23 Decision").

52. In his March 23 Decision, Judge Blackshear lifted the automatic stay in the

Sellers' Bankruptcy Cases to the limited extent of allowing Broadwall to obtain a determination in State Court as to whether Sellers could be compelled to close ---- but not to relitigate issues that had already been decided in Bankruptcy Court. As noted above, the Reorganization Plan and Confirmation Order give the Bankruptcy Court continuing exclusive jurisdiction over numerous matters. Both parties then made summary judgment motions in the State Court Action.

53. By notice of motion dated April 12, 2005, Sellers asked the State Court to dismiss the State Court Action. In seeking this relief, Sellers asked the State Court to decide again the issue of the timeliness of the $600K Payment which Bankruptcy Judge Blackshear had repeatedly decided in favor of Broadwall. Indeed, the March 23 Decision substantively addressed the issue and held that the $600K Payment was timely.

54. By letter dated June 28, 2005, Broadwall's counsel notified Seller that it was scheduling a closing under the Contract to take place on July 29, 2005 ("the Closing Letter"). The Closing Letter set no pre-conditions to the closing.

55. Unfortunately, consistent with their conduct over the last three years, Sellers still refused to close. Broadwall therefore had no choice but, as Bankruptcy Judge Blackshear directed, to seek an order in the State Court compelling Sellers to close. Broadwall filed a motion dated July 18, 2005 seeking such relief.

56. The only issue which Sellers raised in the State Court Action as a justification for their refusal to close was the issue that had previously been decided in the Broadwall Bankruptcy Proceeding ---- namely, the purported termination of the Contract due to untimely tender of the $600K Payment.

57. On or about November 23, 2005, Justice Howard Beeler, Justice of the Supreme Court of the State of New York, decided the summary judgment motions that were pending

13

in the State Court Action ("the Summary Judgment Decision"). In the Summary Judgment Decision, Justice Beeler reviewed much of the history of the case as previously outlined, and then made the following explicit determinations:

- Broadwall timely tendered the $600K Payment. Bankruptcy Judge Blackshear reached this conclusion and, even if Judge Blackshear had not addressed this issue, Justice Beeler would nevertheless reach the same conclusion.

- Judge Blackshear "made a substantive finding that the option contract was not terminated".

- Broadwall has the right to close under the Contract, and Sellers must close within 30 day.

- Sellers' motion for summary judgment (based on the contention that the Contract had terminated due to untimely tender of the $600K Payment) is denied in its entirety.

58. Sellers appealed from Justice Beeler's Summary Judgment Decision. In doing so, the sole issue they again raised was the issue which had already been described in Bankruptcy Court ---- *i.e.* the timeliness of the $600K Payment and the continued validity of the Contract.

59. Moreover, in arguing to the Appellate Division, Sellers were misleading and disingenuous.

60. Thus, they continued to point the Appellate Division only to the Assumption Order issued by the Bankruptcy Court, without any mention of the Declaratory Judgment Order. Based on the deliberate conflation of these two orders, Sellers deliberately tried to mislead the Appellate Division to conclude that the Bankruptcy Court had violated the Second Circuit's mandate in the case of *Orion Pictures Corp. v. Showtime Networks Inc.*, 4 F.3d 1095 (2d.Cir.1993).

61. Broadwall informed the Appellate Division that (a) the Bankruptcy Court had already decided the issue of the non-termination and continuing validity of the Contract; (b) the decision of the Bankruptcy Court was correct on the merits; and ©) if the determination of the

14

Bankruptcy Court was wrong, the proper forum in which to correct such error was in the U.S. District Court where the Bankruptcy Appeals were pending.

62. On September 21, 2006, the Appellate Division issued the State Appellate Decision. In it, the Appellate Division somehow determined that the Bankruptcy Court's decision about the timeliness of the $600K Payment, the fact that the Contract had not terminated pre-petition and was executory, and the continued validity of the Contract was not "tantamount to a finding that the condition precedent to performance (*viz* closing) was met by plaintiff's belated tender of the remainder of the downpayment." It then proceeded to re-address the substantive merits of this issue, and reached a conclusion contrary to that of the Bankruptcy Court. The State Appellate Decision never even deigned to mention the pending Federal Court appeals from the Bankruptcy Court orders.

63. Sellers have made clear that they intend to waste no time in changing the status quo so that any further efforts by Broadwall to enforce its rights under the Contract will be futile and meaningless.

64. Thus, almost immediately after the State Appellate Decision, Sellers filed an application in the State Court Action to vacate the notices of pendency which have so far prevented them from transferring the Properties to anyone other than Broadwall. If this occurs, Broadwall will forever lose its rights under the Contract, and the core component of its confirmed Reorganization Plan will become impossible.

**FIRST CLAIM FOR RELIEF**

65. Broadwall repeats and realleges the allegations set forth in paragraphs 1-64.

66. The issue addressed in the Declaratory Judgment Order, in the Assumption Order and in the Confirmation Order and other orders ---- all of which related to the validity and non-termination of the Contract ---- were core bankruptcy issues over which the Bankruptcy Court

15

had exclusive jurisdiction.

67. Furthermore, after the Confirmation Order, the Bankruptcy Court retained exclusive jurisdiction over many issues relating to the Broadwall Bankruptcy Case, including to "hear and determine issues or disputes related to the Contract", "to determine such other matters. . . . that may arise in connection with the implementation of the Plan", and to "hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan and the Related Documents".

68. In his March 23 Decision, Judge Blackshear did not withdraw, modify or abandon this exclusive jurisdiction, but simply referred the parties to the State Court Action for the limited purpose of addressing issues relating to a closing under the Contract which had not previously been decided in the Broadwall Bankruptcy Case.

69. In the Appellate Decision, the Appellate Division improperly addressed issues that had previously been decided in the Broadwall Bankruptcy Proceeding and, by doing so, encroached on the exclusive jurisdiction of the Bankruptcy Court.

70. The State Appellate Decision is therefore void and should be declared so by the Court.

**SECOND CLAIM FOR RELIEF**

71. Broadwall repeats and realleges the allegations set forth in paragraphs 1-70.

72. By addressing issues that had already been decided in the Broadwall Bankruptcy Proceeding and which were outside the scope of Judge Blackshear's referral in the March 23 Decision, the State Appellate Decision violated the automatic stay of 11U.S.C. § 362 in the Sellers' Bankruptcy which Judge Blackshear had lifted only for the limited purpose of deciding issues which he had not already decided in the Broadwall Bankruptcy Proceeding.

73. The State Appellate Decision is therefore void and should be declared so by the Court.

### THIRD CLAIM FOR RELIEF

74. Broadwall repeats and realleges the allegations set forth in paragraphs 1-73

75. The State Appellate Decision conflicts with the prior orders of the Bankruptcy Court regarding the validity of the Contract and will preclude implementation of Broadwall's Reorganization Plan.

76. Pursuant to 11U.S.C. § 1142, this Court should therefore declare the State Appellate Decision void, enjoin Sellers from refusing to close by reason of the State Appellate Decision, compel Sellers to comply with the prior orders of the Bankruptcy Court regarding the validity of the Contract and compel Sellers to proceed to a closing in accordance with the Summary Judgment Decision.

### FOURTH CLAIM FOR RELIEF

77. Broadwall repeats and realleges the allegations set forth in paragraphs 1-76.

78. Broadwall has no adequate remedy of law to prevent Seller, by relying on the State Appellate Decision, from frustrating Broadwall's rights to acquire the Properties under the Contract.

79. Therefore, in addition to a declaration that the State Appellate Decision is void, Broadwall requires an order enjoining the Sellers from continuing to prosecute the State Court Action, compelling the Sellers to comply with the prior orders of this Court regarding the validity of the Contract, and compelling the Sellers to close in accordance with the Summary Judgment Decision and sell the Properties to Broadwall.

## FIFTH CLAIM FOR RELIEF

80. Broadwall repeats and realleges the allegations set forth in paragraphs 1-79.

81. The State Appellate Decision conflicts with the confirmed Reorganization Plan and other prior orders of the Bankruptcy Court.

82. The State Appellate Decision represents a frontal collateral attack on the validity of the Bankruptcy Court's power to enforce its prior orders.

83. Unless the State Court Action is removed to this Court, relief granted to Broadwall by the confirmed Reorganization Plan and other prior orders of this Court would be undermined, and Broadwall would be deprived of substantial federal court precedents prohibiting collateral attack on a final order of a bankruptcy court.

84. Injunctive relief is necessary for the Bankruptcy Court to protect the subject matter of its jurisdiction.

85. Pursuant to 28 U.S.C. § 1651, this Court should therefore remove the State Court Action to this Court, declare the State Appellate Decision void, enjoin sellers from refusing to close by reason of the State Appellate Decision, compel Sellers to comply with the prior orders of the Bankruptcy court regarding the validity of the Contract and compel Sellers to proceed to closing in accordance with the Summary Judgment Decision.

**WHEREFORE**, Broadwall demands the following relief:

A. a declaration that the State Appellate Decision is void;

B. an order enjoining the Sellers from continuing to defend the State Court Action by relitigating issues that were previously resolved in the Bankruptcy Court;

C. an order directing Sellers to comply with the prior orders of the Bankruptcy Court regarding the validity of the Contract;

D. an order directing the Sellers to close under the Contract and sell the Properties to Broadwall in accordance with the Summary Judgment Decision; and

E. such other and further relief as this Court finds just and proper.

Dated: Mineola, New York
October 10, 2006

WESTERMAN BALL EDERER MILLER
& SHARFSTEIN, LLP


By: _/s/ Jeffrey A. Miller_
Jeffrey A. Miller, Esq. (JAM-6352)
170 Old Country Road, Suite 400
Mineola, New York 11501
Tel: (516) 622-9200
*Counsel for Broadwall America, Inc.,
    Reorganized Debtor*

W:\wpdocs\BROADWALL\BANKRUPTCY\Adv Pro re Broadwall v Bram et al - OSC\COMPLAINT v. 7FINAL.wpd